In the District Court of the United States
For the District of South Carolina

RECEIVED
USDC CLERK, CHARLESTON, S"
2005 MAY 20 P 1: 58

CHARLESTON DIVISION

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Deidre P. Middleton, a/k/a<br>Deidre P. Frayer<br><br>　　　　　Defendant. | Civil Action No. 2:04-0357-DCN-GCK<br><br><u>**REPORT AND RECOMMENDATION<br>OF THE MAGISTRATE JUDGE**</u> |

## I. INTRODUCTION

The United States of America, as Plaintiff ("Plaintiff"), brought this action pursuant to 26 U.S.C. § 7405 to recover a federal tax refund erroneously paid to the defendant, Deidre P. Middleton, a/k/a Deidre P. Frayer[1] (the "Defendant"), a resident of North Charleston, South Carolina.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(e), this case was referred to the undersigned United States Magistrate Judge to review the pleadings and submit findings and recommendations to the District Court, which has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. §§ 7402(a) and 7405.

## II. *PRO SE* STATUS OF DEFENDANT



The Defendant is a *pro se* litigant, and thus her pleadings are accorded liberal construction. Hughes v. Rowe, 449 U.S. 5, 9 (1980) (*per curiam*); Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 404 U.S. 519 (1972); Loe v. Armistead, 582 F. 2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied,* Leeke v. Gordon, 439 U.S. 970 (1978).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes, 449 U.S. at 9. The mandated liberal construction afforded to *pro se* pleadings means

---

[1]　　The Plaintiff has informed the court that Ms. Middleton divorced and changed her surname to Frayer after she received the erroneous refund. See Plaintiff's Motion [13-1] at p. 1, n. 1.

that if the court can reasonably read the pleadings to state a valid claim or defense upon which the *pro se* party could prevail, it should do so, but a district court may not rewrite pleadings to include claims or defenses that never were presented. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct legal arguments for the *pro se* party (Small v. Endicott, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). Finally, the court cannot ignore a clear failure in a pleading to allege facts supporting a claim or defense cognizable in a federal district court. Weller v. Department of Social Services, 901 F.2d 387 (4th Cir.1990).

## III. BACKGROUND

This case arises out of the investigation by the Internal Revenue Service ("IRS") of the filing of fraudulent tax returns for trusts as a vehicle for individual taxpayers to obtain, as tax refunds, their lifetime or annual social security earnings made to the Social Security Administration. In general, promoters of this scheme advised individual taxpayers to file a United States Income Tax Return for Estates and Trusts ("Form 1041"), on which the individuals would list lifetime or annual social security taxes paid and request that those taxes be refunded. The Criminal Investigation Division of the IRS identified over 7,000 participants who are involved in these filings, including the Defendant.[2]



On or about December 30, 1998, a tax return for the 1997 tax year was filed on behalf of the "Diedre P. Middleton Trust" (the "Trust").[3] The Defendant was identified as the trustee of the Trust.[4] The Form 1041 set forth the following information:[5]

---

[2] See Declaration of Pamela Snow, Collection Group Manager employed in the Small Business Self-Employed Division of the IRS in Charleston, South Carolina (hereinafter "Snow Declaration"), attached to Plaintiff's Motion for Summary Judgment (hereinafter "Plaintiff's Motion"). [13-1]

[3] See Exhibit A, attached to Plaintiff's Motion. [13-1] The Defendant claims she had no knowledge of the Trust but "was told it was a tax refund drawn from [her] social security." The Defendant admits to signing the Form 1041 but claims it was blank at the time it was signed. See Exhibit C at ¶¶ 1-3, attached to Plaintiff's Motion. [13-1]

[4] See Exhibit A attached to Plaintiff's Motion. [13-1]

[5] See Exhibit A attached to Plaintiff's Motion. [13-1]

|                              |                |
|------------------------------|----------------|
| Total Income                 | $ 73,392.00    |
| Deduction: Fiduciary Fees    | $ 73,392.00    |
| Adjusted Total Income        | $ 0.00         |
|                              |                |
| Less: Exemption              | $ 7,950.00     |
| Taxable Income               | $ (7,950.00)   |
|                              |                |
| Total tax on $-7,950         | $0.00          |
| Less: Federal Income Tax Withheld | $ 20,147.00 |
| Refund Claimed               | $ 20,147.00    |

The IRS received the Form 1041, and on February 16, 1999, issued a refund (the "Refund") in the amount of $20,147.00 to the Trust.[6] The check was endorsed and negotiated by the Defendant on or about February 26, 1999.[7] The Defendant has acknowledged receipt of the Refund.[8] Thereafter, the IRS determined that the Refund was issued in error to the Trust, because no such trust existed.[9]

## IV. PROCEDURAL HISTORY



On February 5, 2004, within five years of the payment of the Refund, the Plaintiff timely filed this action, pursuant to 26 U.S.C. § 7405, to recover the Refund paid to Defendant. [1-1] The Defendant answered, denying any knowledge of the Trust, but admitting she received a

---

[6]    See Declaration of Joan K. Pelon, Tax Computation Specialist for the Internal Revenue Service (hereinafter "Pelon Declaration"), at ¶ 3, attached to Plaintiff's Motion. [13-1]

[7]    See Pelon Declaration at ¶ 4, attached to Plaintiff's Motion. [13-1]

[8]    See Exhibit C at ¶ 18, attached to Plaintiff's Motion. [13-1]

[9]    See Pelon Declaration at ¶ 5, attached to Plaintiff's Motion. [13-1]

check for $20,147.00, which she believed was a draw down of her social security deposit.[10] After the time for discovery had expired, the Plaintiff filed a Motion for Summary Judgment [13-1], contending, pursuant to 26 U.S.C. § 7405, that it was entitled to recover the Refund issued to the Defendant.

Thereafter, the undersigned United States Magistrate Judge issued an order, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), which advised Defendant of the summary judgment dismissal procedure and the possible consequences if she failed to respond adequately to the Plaintiff's Motion. [14-1] The Defendant failed to respond to the Roseboro order, and on November 1, 2004 the undersigned issued a Report and Recommendation [15-1] which recommended that Plaintiff's Motion for Summary Judgment be granted against the Defendant. Thereafter, on November 18, 2004 the Defendant filed a response [16-1] to the Recommendation, alleging that she had not received the Roseboro order and requesting that summary judgment not be entered against her. The District Court, by an Order entered on November 22, 2004, remanded the case to the undersigned with instructions to issue another Roseboro order to the Defendant. [17-1] Accordingly, a second Roseboro was issued, and the Defendant responded by filing a motion to dismiss Plaintiff's case. [19-1]

## V.    SUMMARY JUDGMENT STANDARD



The determination of a motion for summary judgment is governed by the holding in Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56© mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is well established that a defendant moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a

---

[10]    See Defendant's Answer. [5-1]

matter of law. Barwick v. Celotex Corp., 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that the defendant may be liable under the claims alleged. See F.R.Civ.P. 56(e). It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. Felty v. Graves-Humphreys Co., 818 F.2d 1126 (4th Cir. 1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. Stone v. University of Md. Medical Sys. Corp., 855 F.2d 167 (4th Cir. 1988).

## VI.   ANALYSIS

In the instant case, the Plaintiff offers the following evidence to show that the Refund was erroneously issued and that it is entitled to summary judgment. As shown in the chart set forth on page 3, *supra*, the Refund was issued based upon the representation that the Trust existed, although the Defendant since has admitted that the Trust did not exist.[11] Next, the Defendant had admitted that the Trust earned no income[12] and did not incur fiduciary fees of $73,392.00.[13] Finally, although the Form 1041 stated that the Trust paid $20,147.00 in federal income taxes during 1997, the Defendant has admitted that no taxes were paid.[14] In summary, each of the



---

[11]   See Exhibit C, ¶¶ 1-2, attached to Plaintiff's Motion. [13-1]

[12]   See Exhibit C at ¶¶ 5-6, attached to Plaintiff's Motion for Summary Judgment. [13-1]

[13]   See Exhibit C at ¶¶ 7-8, attached to Plaintiff's Motion for Summary Judgment. [13-1]

[14]   See Exhibit C at ¶¶ 9-10, attached to Plaintiff's Motion for Summary Judgment. [13-1]

representations made on the income tax return was false, and the income tax refund, which was based on those representations, was made in error.

The IRS has collected $6,638.00 from the Defendant in partial repayment of the Refund.[15] However, the balance due to the IRS, as of August 31, 2004, is $20,025.97.[16]

Section 7405(b) of the Internal Revenue Code provides the Plaintiff with a civil cause of action to recover taxes "erroneously refunded." 26 U.S.C. S 7405(b); *see, e.g.*, Hutchins v. Internal Revenue Service, 67 F.3d 40, 42 (3d Cir.1995); Clark v. United States, 63 F.3d 83, 87 (1st Cir. 1995) (internal quotation omitted) ("taxpayers who receive erroneous refunds owe the IRS because they have been unjustly enriched"); *see also* United States v. Russell Mfg. Co., 349 F.2d 13, 16 (2d Cir. 1965) ("[an action by the government to recover a tax refund is an action for restitution"). "The United States has the burden to prove that an erroneous refund was made, and the amount of the refund." United States v. Reagan, 651 F.Supp. 387, 388 (D. Mass. 1987), *citing* Soltermann v. United States, 272 F.2d 387 (9th Cir.1959); United States v. Augspurger, 452 F.Supp. 659, 666 (W.D.N.Y.1978), *amended on other grounds*, 477 F.Supp. 94 (1979).



Courts have rejected attempts by taxpayers to use trusts to avoid the payment of income taxes or to obtain erroneous tax refunds. See United States v. Krall, 835 F.2d 711, 714 (8th Cir. 1987); United States v. Buttorff, 761 F.2d 1056, 1060-61 (5th Cir. 1985). In Buttorff, a promoter was enjoined from promoting a sham trust scheme where trust tax returns were prepared listing the individual taxpayers' income and claiming deductions for fiduciary fees, resulting in no or negative taxable income. Similar sham trusts have been unsuccessfully attempted in other cases. See e.g., Holman v. United States, 728 F.2d 462 (19th Cir. 1984). Plaintiff contends that the tax return filed by the Defendant in this case, which claimed a fiduciary expense equal to the amount of income, which resulted in a refund of all tax alleged to be withheld from the Defendant, is similar to the trusts used in those other schemes.

---

[15] See Pelon Declaration at ¶ 6, attached to Plaintiff's Motion for Summary Judgment. [13-1]

[16] See Pelon Declaration at ¶ 8, attached to Plaintiff's Motion for Summary Judgment. [13-1]

In the instant case, the IRS issued an erroneous Refund to the Defendant. The Defendant has conceded that she engaged in a course of conduct which allowed her to recover previously paid social security taxes by submitting a claim for a refund for current income taxes based on a non-existent trust.[17] The Defendant contends, however, that she was told by her former mother-in-law, Pearl Middleton ("Middleton"), that she could receive a tax refund based on "funds drawn off [Defendant's] Social Security."[18] The Defendant further contends that Middleton provided her with a blank tax return and blank Form SS-4 and that Defendant signed the blank documents at Middleton's request.[19] Next, Defendant claims that Middleton provided the blank documents to a tax preparer, who later completed them.[20]

In response to the Plaintiff's discovery requests, the Defendant failed to produce any evidence to support her request, as set forth on the Form 1041, for the Refund.[21] Of course, it is well-settled that a party seeking to avoid the entry of summary judgment must make a sufficient showing to establish a dispute as to a material fact. The Defendant has failed to produce any evidence during discovery to support the claim that she was entitled to the Refund as alleged on the Form 1041. Instead, the Defendant contends that she signed her name to blank tax forms at the request of her mother- in-law, and claims ignorance of the fraudulent scheme from which she benefitted. As the Seventh Circuit recently noted, "'[m]isrepresentation' differs from 'fraud' and the United States need not prove fraud in order to recover an erroneous refund." United States v. Northern Trust Co., 372 F.3d 886, 888 (7th Cir. 2004) (referring to the five-year limitation period found in I.R.C. § 6532(b)). In the present case, the Defendant's tax return made misrepresentations to the IRS and the IRS issued a tax refund to her based upon those

---

[17] See Exhibit D, at ¶ 1, attached to Plaintiff's Motion. [13-1]

[18] See Exhibit D, at ¶ 1, attached to Plaintiff's Motion. [13-1]

[19] See Exhibit D at ¶¶ 1, 3, attached to Plaintiff's Motion. [13-1]

[20] See Exhibit D at ¶¶ 3-5, attached to Plaintiff's Motion. [13-1]

[21] See Exhibits C-H, attached to Plaintiff's Motion for Summary Judgment. [13-1]

misrepresentations. The Defendant signed the Form 1041 under penalty of perjury. A signature on a tax return serves as a written declaration, under penalty of perjury, as to the truth of the matters asserted therein. See I.R.C. § 6065. Accordingly, the Plaintiff is entitled to summary judgment so that the Refund may be recovered.

Interest accrues on the erroneous Refund pursuant to 26 U.S.C. §§ 6602. On February 16, 1999, the IRS issued the Defendant a refund in the amount of $20,147.00, based upon the false Form 1041 filed by the Defendant. After payments and other credits, the Defendant is indebted to the United States for the amount of $20,025.97, plus interest, penalties, and costs, accruing pursuant to law from August 31, 2004 to the date of entry of judgment.[22]

## RECOMMENDATION

Based upon the foregoing, it is recommended that Plaintiff's Motion for Summary Judgment **[13-1] should be granted.**

_____
George C. Kosko
United States Magistrate Judge

May 19, 2005
Charleston, South Carolina

---

[22] See Plaintiff's Motion for Summary Judgment [11-1] at p. 1; see also Pelon Declaration at ¶ 6.

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the period for filing objections, **but not thereafter**, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d

505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402
